IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bobby G. Brattain, | ) | Case No.: 4:20-cv-2031-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| QHC of South Carolina, Inc., d/b/a | ) | |
| Carolinas Hospital System, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    This matter is before the Court with the Report and Recommendation of United States Magistrate Kaymani D. West ("Report and Recommendation" or "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] Bobby G. Brattain ("Plaintiff" or "Brattain") filed this action alleging discrimination under the Age Discrimination in Employment Act ("ADEA") in connection with his termination during a 2018 Reduction in Force ("RIF"). (DE 1-1.) On January 15, 2021, QHC of South Carolina, Inc., d/b/a Carolinas Hospital System ("Defendant" or "CHS") filed a Motion for Summary Judgment. (DE 23). Plaintiff filed a response in opposition (DE 32), and Defendant filed a reply thereto (DE 33).

    On July 26, 2021, the magistrate judge issued the Report, recommending that Defendant's Motion for Summary Judgment be granted and that the case be dismissed. For the reasons stated

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

below, the Court adopts the Report and Recommendation and grants Defendant's Motion for Summary Judgment.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. However, as a brief background relating to the objections raised by Brattain, the Court provides this summary. Plaintiff was 64 years old when he was terminated by Defendant in 2018. (DE 32-1.) Brattain was employed by CHS[1] as a controller since 2008. Although Plaintiff was hired as a controller, he requested that his job title be changed from controller to Assistant Chief Financial Officer ("ACFO") and that he not be transferred to a different location. (DE 32-1, p. 35.) CHS accommodated those requests. Plaintiff testified that he was ACFO "in title only," and his primary responsibilities were more like those of a controller, that is, to "manage and direct the accounting functions at [CHS]." (DE 32-1, p. 36.) At the time of his termination, Brattain's direct supervisor was CFO Loren Rials ("Rials"). Brattain testified that although his job duties and salary did not change, his title changed from ACFO to "CFO assistant" around January 2017. Plaintiff indicated he assumed the title change took place because he went from being a "corporate" employee to being a "hospital" employee. Plaintiff's job duties never changed from that of a controller.[2] (DE 32-1, pp. 15-16.)

---

[1] In 2008, Brattain was actually employed by Carolinas Hospital – Florence ("CHS-Florence"), which later merged with Carolinas Hospital – Marion ("CHS-Marion") and became CHS. However, for purposes of this Order, Brattain was employed by Defendant CHS at all times relevant hereto.

[2] In discovery responses, however, Defendant indicated Plaintiff's job title was changed from "ACFO to Chief Financial Officer Assistant in or around January 2017 because the Plaintiff was removed from the ACFO training program. The Plaintiff was removed from the ACFO training program because [he] was unwilling to interview for Chief Financial Officer positions which may have required him to relocate." Def. Resp. Interrog. 8, ECF No. 32-12 at 7.

On May 6, 2016, Monica Price ("Price"), who was in her early 40's at the time, began working at CHS-Florence as an ACFO. (DE 32-3; 32-4.) Price was on the ACFO track, meaning her long-term goal was to be a CFO of a hospital. (DE 23-7.) Plaintiff was removed from the ACFO training program because he had advised CHS-Florence that he was not interested in interviewing for CFO positions that may require him to relocate. (DE 23-4.) Rials received "numerous complaints regarding [Brattain's] attitude and communication skills with his co-workers and staff." (DE 23-5, ¶¶ 5-6.) Rials indicated that Plaintiff had no issue with his productivity, rather "attitude and communication style was [Brattain's] issue." (DE 23-4.) Rials noted that he (Rials) was "not the best" at documenting issues regarding attitude, so he would have given Brattain informal verbal counseling that was not documented. (DE 23-4, p. 25.) Rials never felt the need to place Plaintiff on a Performance Improvement Plan, but Rials recalled one written documented disciplinary action against Brattain. (DE 23-4, p. 25.)

Brattain's 2018 Review is the latest written evaluation. Brattain completed the self-evaluation portion of his 2018 annual review himself, signing it on February 26, 2018. (DE 23-8.) The 2018 Review Form includes these standards for the evaluation ratings: 1, "Unacceptable"; 2, "Needs Improvement"; 3, "Meets Requirements"; 4, "Exceeds Requirements"; 5, "Distinguished." (DE 23-8, p. 4.) As part of the review process, Rials then considered Plaintiff's self-evaluation and scores and made some changes. (DE 23-4, pp. 19-20.) The last page of the 2018 Review includes a "Total Average" score, which is derived from the average scores received in several categories. Plaintiff's Total Average as computed by Rials was 2.71, which was between the "Needs Improvement" and "Meets requirements" categories.[3] In the "Supervisor Comments,"

---

[3] Although evaluations from prior years are not discussed in any detail by either party, indicates the record did not include a 2017 evaluation, he received a "Meets Expectation" for his 2016 evaluation, and he received "Exceeds Expectation" marks in November 2014 and October 2013. (DE 32-8.)

3

Rials noted that he and Brattain "[d]iscussed better communication with [Brattain's] staff and other departments." (DE 23-8, p. 9.) Plaintiff indicated he had not seen the version of the review that contained Rials's strike-through changes to his scores until after litigation ensued. (DE 32-1.) On March 8, 2018, Rials approved a 2017 bonus for Plaintiff in the amount of $12,863. (DE 32-7.) At 8.5%, the bonus percentage was the same as that issued to Price that year. (DE 32-7.)

A new Chief Executive Officer, Vance Reynolds ("Reynolds"), took office of CHS-Florence and shortly thereafter also became the CEO of CHS-Marion. (DE 23-10.) Reynolds implemented a RIF at both hospitals to reduce financial costs on the hospitals and increase profitability for the long term. (DE 23-10, ¶¶ 3-4.) In determining what positions to eliminate, Reynolds instructed his leadership team, including Rials, to "look at productivity models and determine which departments were not operating efficiently." (DE 23-10, ¶ 5.) Next, Reynolds told his leadership team to review each individual employee's job experience, overall job performance, versatility, problem solving ability, interactive skills, customer service, attendance, disciplinary actions, and seniority against other employees in their departments. (DE 23-10, ¶ 6.)

Rials's evaluation showed that the accounting department was overstaffed as there were two CFOs and two ACFOs between CHS-Florence and CHS-Marion. (DE 23-6, ¶ 9.) Reynolds directed Rials to eliminate one of the two ACFO positions. In determining who should be retained, CHS "vetted based on job title and like job responsibilities." (DE 23-7.) Plaintiff was compared to Price, the other ACFO. (DE 23-7.) At the time of Plaintiff's termination, Price was 42 years old, and her salary was $110,000. (DE 23-7, ¶ 15.) Plaintiff was 64 years old, and his salary was approximately $153,000. (DE 32-1.) Rials recommended three positions be terminated: CHS-Marion's CFO, Wes Knight (age 37); Plaintiff (age 64); and Supervisor of Accounting at the Hospital, Debbie Pearson (also listed as Bracey) (age 59). (DE 23-5, ¶ 10.)

4

Reynolds reviewed the recommendations and made the final decision approving them. (DE 23-5.) In responding to discovery in this case, Defendant indicated the decision to terminate Plaintiff's position as a result of the RIF was "based on several considerations." (DE 23-11.) The "main considerations" were the following: (1) there were two ACFOs at [CHS-Florence] and such duplicative positions were unnecessary and a financial burden; (2) the Plaintiff's performance was below that of the other CFO [Price] because [Price] carried out the majority of the ACFO responsibilities; (3) the Plaintiff had poor employee satisfaction ratings; (4) the Plaintiff has a bad temper and was known to yell at staff members; and (5) the Plaintiff did not excel as a leader. (DE 23-11.) f

On June 7, 2018, Rials and HR Director Kay Douglas ("Douglas") met with Brattain and advised him that his position was being eliminated and he was terminated, effective immediately. (DE 23-3.) Plaintiff was advised of his severance package. No other reason was given for his termination. (DE 23-3.) After Plaintiff's termination, Rials had ACFO Price and the Assistant Controller at CHS-Florence, absorb Plaintiff's prior job duties. (DE 32-2, 32-3.) Shortly thereafter and unexpectedly, Jordon submitted her resignation during the week of June 18, 2018, and Price submitted her resignation on June 25, 2018. (DE 23-6, ¶¶ 10-11.) On June 25, 2018, after Jordan submitted her resignation, the position of Controller at CHS–Florence was posted. (DE 23-12, 32-9.) This job posting was cancelled on November 2, 2018, without filling the position. (DE 23-12.) On June 29, 2018, after Price submitted her resignation, the position of ACFO at CHS–Florence was posted. (DE 23-12, 32-10.) This job posting was cancelled on July 25, 2018, without filling the position. (DE 23-12.)

After Price's resignation, the ACFO position at CHS–Florence was downgraded to a Director of Finance position. (DE 23-7.) The Director of Finance position has fewer

5

responsibilities than the ACFO position. (DE 23-7.) The gap in responsibilities between the ACFO position and the Director of Finance position was absorbed by Rials. (DE 23-7.) On July 23, 2018, a job posting for the position of Director of Finance at CHS–Florence was posted. (DE 23-12.) The Director of Finance position was filled by Billy Bailey ("Bailey") on October 1, 2018. (DE 23-6.) Bailey was 52 years old on the date he was hired. (DE 23-6.) On or around November 14, 2018, a job opening for Controller of CHS-Florence was posted. (DE 32-11.) This position was absorbed by Allison Isenberg (age 41), CHS-Marion controller, when Bailey promoted her from the Controller for CHS-Marion to the Market Controller for both CHS-Florence and CHS-Marion. (DE 23-4.)

On July 26, 2021, the magistrate judge issued a Report and Recommendation, recommending that Defendant's Motion for Summary Judgment be granted and that the action be dismissed. Plaintiff filed objections to the Report and Recommendation alleging, *inter alia*, that the magistrate erred in three respects: (1) analyzing Defendant's motion despite its reliance upon the incorrect McDonnell Douglas framework; (2) considering an invalid comparator; and (3) improperly weighing facts regarding Defendant's shifting reasoning for Brattain's termination. (DE 39.) CHS filed a reply in opposition to each of these three grounds. (DE 40.) This matter is now ripe for review.

**II.     DISCUSSION**

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the

6

district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court addresses Brattain's specific objections *seriatim*.  First, Plaintiff objects to the Report and Recommendation contending that CHS conducted an incorrect analysis using an ADEA RIF analysis based on Jeffers,[4] rather than an ADEA RIF analysis based on the Mitchell/Stokes performance based analysis.  (DE 39, p. 4.)

As an initial matter, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).  Absent direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor motivated an employer's adverse employment action, a plaintiff may proceed under the McDonnell Douglas "pretext" framework to establish a

---

[4]  CHS sets out the following prima facie test from Jeffers v. LaFarge North America, Inc.:

> In order to make out a prime facie case under the ADEA in a reduction in force situation, such as the one at bar, the plaintiff must show: (1) that he was in the protected age group; (2) that he was discharged; (3) that at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff.

Jeffers v. Lafarge N. Am., Inc., 622 F. Supp. 2d 303, 316 (D.S.C. 2008) (citing Herold v. Hajoca Corp., 864 F.2d 317, 319–20 (4th Cir. 1988)). CHS sought summary judgment, arguing Plaintiff cannot satisfy the third or fourth prong.

7

claim of employment discrimination. Buchhagen v. ICF Int'l, Inc., 650 F. App'x 824, 828 (4th Cir. 2016) (recognizing that the Fourth Circuit applies the McDonnell Douglas burden-shifting framework to ADEA cases). Under this framework, a plaintiff must first prove a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id.

The crux of Brattain's first objection is that the Report considered CHS's Motion for Summary Judgment, analyzing Brattain's prima facie case based on Jeffers, rather than Mitchell, 12 F.3d 1310, 1315 (4th Cir. 1993), as modified by Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 430 (4th Cir. 2000). (DE 32, pp. 9-10.) In Mitchell, the court observed that, in RIF situations in which a "group of employees is discharged because of the company's economic conditions," the question "is not why members of the group were discharged or whether they were meeting performance expectations, but whether the particular employees were selected for inclusion on the list for discharge because of their age." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir. 1993). Mitchell continues:

> Therefore, to target age discrimination in a reduction-in-force context where the selection of employees for discharge is purportedly made on the basis of *relative performance,* even though all employees were meeting existing performance standards, a prima facie case may be established by showing that: (1) the employee was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.

Mitchell, 12 F.3d at 1315 (emphasis in original). Stokes modified the "unprotected persons" portion of the fourth prong to "substantially younger persons," making the fourth prong, "the process of selection produced a residual work force including some persons in the group who were

*substantially younger* than him and who were performing at a level lower than that at which he was performing." Stokes, 206 F.3d at 430 (emphasis added) (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)). In O'Connor the Court found a relevant comparator in an ADEA claim could be one who was "substantially younger" than the plaintiff, not only one who was outside the protected class (i.e., under the age of 40). Brattain submits he satisfied his prima facie case based on the prongs set out in Mitchell as modified by Stokes.

Brattain further contends that the Report should not have considered CHS's alternative argument presented in its Reply. Brattain cites to Texas Dept. of Community Affairs v. Burdine, in support of the proposition that the Court should ignore CHS's reply brief in support of the presumption that Brattain made a prima facie case of age discrimination. 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981) ("If the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.") However, the Court is not persuaded by this argument because it would require it to completely ignore the Reply filed by CHS setting forth Brattain's failure to make a prima facie case for age discrimination and the record as whole.

Prongs one and two of the prima facie test are not at issue here because CHS concedes Brattain meets them. As to the third prong, the Court finds, based on a review of the record, that Price (42) was substantially younger than Brattain (64) and that Brattain's 2018 evaluation was below expectations and that there were complaints from other employees regarding Brattain's interactions. (DE 23-8.) In addition, Rials indicated Price "presented as more valuable to the organization than [Plaintiff] did." (DE 23- 4.) Since Brattain's case is presented under the McDonnell Douglas proof scheme in response to a defendant's motion for summary judgment,

> the plaintiff must present admissible evidence to establish a prima facie case. If the defendant then advances a legitimate explanation, the plaintiff must present

> evidence, including that in support of his prima facie case, that satisfies the ultimate burden of persuasion. Although the proof scheme is staged with shifting burdens, such discrimination cases may nevertheless be evaluated under established summary judgment principles.

Mitchell v. Data Gen. Corp., at 1315. Because Brattain has not offered evidence to show that Price was performing at a "substantially equivalent" or lower level than him, the Court concludes as a matter of law that Brattain cannot demonstrate a prima facie case for age discrimination under the Mitchell/Stokes framework.

Next, Brattain objects to the Report and Recommendation comparing Price and Brattain's job duties and responsibilities and contends that Brattain should have been compared to Isenberg. (DE 39, pp. 4-5.) Brattain offers no evidence of Isenberg's relative performance sufficient to establish Isenberg as the appropriate comparison to Brattain, which is required to satisfy the fourth prong under the Mitchell/Stokes framework; thus, the Court is not persuaded by this argument.

Brattain contends that Price and Brattain were both ACFOs but they "carried out materially different duties." (DE 32, p. 12.) Plaintiff cites no legal authority for this argument. In non-RIF discrimination cases an appropriate comparator typically performs substantially similar duties. The Court is not persuaded that the differences between the duties of ACFO Price and Brattain translates to it being somehow improper for Defendant to have considered them relative to each other in evaluating the potential RIF and in evaluating the accounting department as a whole in determining how to handle a necessary, budget-driven RIF. The undisputed evidence is that CEO Reynolds' instructed Rials to consider the efficiency of the accounting department as a whole and found it was overstaffed with two ACFOs and two CFOs. (DE 23-5, ¶¶ 8-9.) Reynolds directed Rials to eliminate one of the two ACFO positions—Price or Brattain. (DE 23-4.) In determining who should be retained, Brattain was compared to Price, the other ACFO. (DE 23-7.) While the

evidence indicates Plaintiff and Price performed somewhat different functions, CHS indicated that the restructuring involved parsing out Plaintiff's duties to others, including Price.

Further, even if Brattain and Price's performances were considered similar, to satisfy the fourth prong Plaintiff would be required to show Defendant retained employee(s) who were both substantially younger and were performing at a level *lower* than Plaintiff was performing. Stokes, 206 F.3d at 430. Brattain has not forecasted any such evidence. While Plaintiff's burden of establishing a prima facie case is "not onerous," Brattain must, nevertheless, provide evidence to satisfy the appropriate prima facie case.

Lastly, Brattain objects to the Report's asserting that even assuming *arguendo* Brattain had established a prima facie case, he failed to establish pretext, despite Defendant offering multiple, shifting, and conflicting allegedly legitimate reasons for Brattain's termination. (DE 39, p. 7.) First, Brattain notes that the Declarations proffered by the CHS would be self-serving such that there is insufficient evidence to establish Brattain's subpar performance. (DE 39, p. 7.) Brattain also points to Douglas' testimony that forms, spreadsheets, and documents were utilized in this evaluating process, but they were never produced during discovery or in supports of these proffered legitimate reasons. (DE 23-7.) Brattain contends this absence of such documentation leaves the weight of the evidence as a factual question for the jury to decide.

Notwithstanding these reasons for Brattain's objection, CHS has proffered legitimate, nondiscriminatory reasons for Brattain's discharge—that a RIF was required and that, after review of productivity models and operational efficiency in the accounting department, one of the two ACFO positions had to be eliminated. Reynolds instructed his leadership to review individual employees' performance, versatility, and interactive skills, among other things, in considering who should be terminated. Based on their relative qualifications, Plaintiff was terminated. No doubt,

11

an employer's business decision for a RIF may be a legitimate, non-discriminatory reason for an employee's termination. See generally Conkwright, 933 F.2d 231 (RIF established legitimate nondiscriminatory business reason for plaintiff/employee's discharge that plaintiff did not overcome with showing of pretext). Although Brattain characterizes Defendant's reasons for the discharge as "shifting," CHS has met its respective burden.

The Court equally finds that the reasons CHS has given are not mere pretext for age discrimination. After a review of Brattain's arguments and evidence concerning purported pretext, the Court is not persuaded because CHS has the right to analyze performance and create RIF criteria as it sees fit. The Court is not in the business of micro-managing these details. Plaintiff's reliance on Cade v. Astrue, 2:11-cv-03498-PMD-BM, 2014 WL 4635568 (D.S.C. Sept. 15, 2014), for the proposition that a lack of documentation of performance problems or the lack of progressive discipline is evidence of pretext is unavailing here. To reiterate, in a RIF situation, management most often looks to the relative performance of employees. As noted by CHS, Cade did not involve a RIF situation. Similarly, a lack of documentation of Price's relatively superior performance is not indicative of pretext here. Consideration of employees' relative performance and value to the company are within the employer's purview, not the Court's. See Conkwright, 933 F.2d at 235 (in ADEA context, noting "proof of general qualifications is less relevant in a reduction-in-force claim because *someone has to be let go.*") (emphasis in original). As in all employment cases, it is the perception of the decisionmaker, not the employee, that is relevant. Evans, 80 F.3d at 960-61.

Equally unavailing is Plaintiff's attempt to look behind and/or second guess certain RIF-termination decisions—such as the decision to terminate the lower-salaried CFO—and his suggestion that Defendant has not provided sufficient modeling documentation to support its

12

decisions. See Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) ("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess."). Because Brattain bears the burden of showing pretext, the Court is equally unmoved by Brattain's assertion that CHS has failed to provide evidence suggesting no pretext for Brattain's termination. Furthermore, business decisions such as what jobs to eliminate, what jobs to fill, and what job functions were to be undertaken by what position are quintessentially the type of business decisions in which the Court will not delve.

Finally, an overarching reason Plaintiff cannot satisfy his burden of proof at this stage is that he has not shown that, but for discrimination based on his age, he would not have been terminated in the RIF. (DE 23-3.) Specifically, Brattain testified that he believed he was terminated because of his salary and his age and that, if not for his salary and CEO Reynolds not wanting to hire someone cheaper, he would have kept his position. Although not singularly dispositive, this testimony is evidence that further supports CHS's evidence that the RIF was fueled by the need for cost-reduction.

Having reviewed the evidence in the record and the respective arguments raised by the parties, Brattain has not forecasted sufficient evidence of an age-based pretextual termination. Accordingly, summary judgment is appropriate as to Brattain's sole claim.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment is granted and that Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED.**

August 30, 2021
Greenville, South Carolina

Joseph Dawson, III
United States District Judge